## Johnson v. Johnson's Trustee, et al.

(Decided May 18, 1915.)

Appeal from Jefferson Circuit Court.
(Chancery Branch, No. 2).

1. Pleading—Judgment—Modification.—Where a will provides "should my said son become wholly incapacitated from work, the said Trust Company shall have full power to provide for my son's necessities out of the principal of said estate should the income be insufficient," and, upon application by the son for an allowance out of the principal, the chancellor makes the allowance but directs the trustee at the end of two years to sequester the rents and reimburse the estate and reserves the power to modify the judgment, a petition for a modification of the judgment, which alleges that because of the temporary withdrawal of certain insurance companies for which he was agent his income was less than his expenses, is not sufficient to require a modification of the judgment and is bad on demurrer.

2. Pleading—Petition—Sufficiency.—A petition by a life tenant to require a trustee to pay the taxes on certain real estate out of the principal of the estate considered in connection with the will, under which the property was devised, examined and held insufficient to make out a case for the relief asked.

A. T. BURGEVINE for appellant.

PERCY N. BOOTH for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Mrs. Anna B. Johnson died testate a resident of Jefferson County, Kentucky. After bequeathing certain sums to her granddaughter, Lilla M. Breed, and her two grandsons, George H. and Edwin T. Breed, she bequeathed her jewelry and personal effects to her sister, Barbara F. Thruston, and her granddaughter, Lilla M. Breed. The remainder of her estate she devised and bequeathed to her executor in trust for her son, Charles Thruston Johnson, during his natural life, and provided that the income therefrom should be paid to him monthly or quarterly for the support of himself and his family. She further provided that should John T. Johnson, the son of Charles Thruston Johnson, survive his father, said income should be paid to him during his life. There was a further provision to the effect that should the wife of Charles Thruston Johnson survive him and his son, John

T. Johnson, then one-half of the net income of her estate should be paid to her so long as she lived or remained his widow. By another clause she provided that should any of the principal of her estate be unused at the death of her son, Charles Thruston Johnson, and his son, John T. Johnson, or the survivor, she devised the same to her granddaughter, Lilla M. Breed. Clause 4 of the will contains the following provision:

"Should my said son become wholly incapacitated from work, the said Trust Company shall have full power to provide for my son's necessities out of the principal of said estate should the income be insufficient."

The Fidelity Trust and Safety Vault Company was appointed and qualified as executor of the will and as trustee for Charles Thruston Johnson.

On December 28th, 1909, application was made by Charles Thruston Johnson to the chancellor of the Jefferson Circuit Court for an allowance out of the principal of the estate, and the sum of $500.00 was paid him. On August 11th, 1910, another allowance of $250.00 was made.

On June 9th, 1911, Charles Thruston Johnson and Sallie Ward Johnson brought another action against the Fidelity Trust Company, trustee, and Lilla M. Breed, for the purpose of obtaining an additional allowance. It developed on the hearing that Charles Thruston Johnson was a severe sufferer from hay fever and asthma and that during the hay fever season, which usually lasts from about the middle of August until the first frost, his health was such that he could not attend to his business of soliciting insurance when at home, and that several weeks of that period he had to spend in Michigan. It further developed that his son, John T. Johnson, who had been an invalid all of his life, became worse and finally died. During the last few months of his illness a large portion of Charles Thruston Johnson's time was occupied in nursing and looking after the wants of his son. Because of the fact that he had to look after him during the night time, he was so worn out the next day that he could not attend to his business. During the year 1909 his net income from his insurance business amounted to $1,205.45; during the year 1910 it amounted to $895.49; during the year 1911 it amounted to $1,517.00. It appears, however, that during the months of August, September, October, November and December, 1910, his net

income amounted to only $273.88. After August 1st, 1910, he paid out in doctor's, nurse's, hospital bills, etc., $1,552.58. Besides these sums which he paid, he had incurred debts amounting to several hundred dollars. After his son's death his wife became seriously ill and finally died. On submission the chancellor held that plaintiff was wholly incapacitated from work during two months of the year. He further held that because of the sickness and death of his son and wife and of the consequent care and attention which he was required to show them, he was totally incapacitated from work within the meaning of the will. The chancellor held, however, that neither the court nor the trustee had a right to pay Mr. Johnson's debts, but should not permit the debts which had accumulated during his incapacity to destroy him and extinguish his earning power. Thereupon the chancellor, on May 27th, 1912, made an allowance of $1,000.00 and directed the trustee to pay the costs of the action and certain taxes due on the real estate and the balance to Mr. Johnson. At the same time he entered the following order:

"At the end of two years from the date of entry of this judgment, the trustee will be and hereby is allowed to take possession of and sequester the rents of said real property, and apply them to reimburse the estate for said sum of One Thousand ($1,000.00) Dollars, herein directed to be advanced to and expended for plaintiff. Control of this action is reserved by the Court for such further orders and modifications of this judgment as may be proper in the future. To all of which the defendants object and except and pray an appeal to the Court of Appeals, which is granted."

The balance which Johnson received under this order was $737.15.

On June 24th, 1914, Charles Thruston Johnson filed an amended petition wherein he pleads that his insurance business was practically ruined by the withdrawal of certain companies which he represented in the State of Kentucky on March 1st, 1914. Between March 1st, 1914, and June 15th, 1914, his commissions amounted to only $101.20. During that time his business expenses amounted to $232.66. During the same time his living expenses amounted to $324.61. He further says that taxes on the real estate in the amount of $278.00 had accumulated since the last payment of the taxes and this

sum the trustee had refused to pay. He also says that he is largely indebted for expenses incurred during the last illness of his son and wife, which debts he had never had the means of discharging. He concludes his amended petition with the prayer that the trustee be required to pay the taxes due on the real estate and that he be relieved from the payment of any rents to the trustee for the house now occupied by him. A demurrer filed by the trustee and Lilla M. Breed was sustained to the petition and the petition dismissed. From that judgment this appeal is prosecuted.

It will be observed that the judgment making Mr. Johnson an allowance of $1,000.00 out of the principal of the estate was rendered on May 27th, 1912. The judgment provided that, at the end of two years, the trustee should take possession of the property and apply the rents to the reimbursement of the estate. This judgment has never been set aside, modified or reversed, but is still in full force and effect. It is insisted by the appellant that the court was without power to enter such a judgment. The point is made that appellant applied for an allowance out of the principal of the estate. He was entitled to have his application either granted or refused. The court was without authority to make the allowance and then provide for its repayment. In answer to this contention it is sufficient to say that the court had jurisdiction of the parties and of the subject matter of the action. If the condition which he attached to the relief granted was not proper, the judgment, of course, was not void, but merely erroneous, and not having been appealed from in time is binding on appellant until the court sees fit, upon proper application, to modify the judgment, which he reserved the right to do.

Even if we regard the petition in this case as an application for the modification of the judgment of May 27th, 1912, instead of an application for relief from an existing judgment, we cannot say that the chancellor erred, on the facts presented, in refusing to modify the judgment.

Considered in the light of the other provisions of the will, we think it clear that the words "wholly incapacitated from work" should not be given a very strict construction. While the testatrix gave to her son only a life estate in the property devised, it is apparent that

she intended the property primarily for his necessities, viewed from the standpoint of the social position which he occupied. His necessities, however, should not be measured by mere temporary conditions, but by his average earnings. If they are sufficient to meet his necessities, he should not receive an allowance merely because, for a month or two at a time, his earnings are not as much as during the remaining months of the year. In passing on the question of allowances out of the principal of the estate, it must also be borne in mind that the principal should not be consumed while appellant is comparatively young and fully able to take care of himself, for, in such a case, there will be nothing left for him when he grows older and is not able to provide for himself. Doubtless this phase of the case was present in the mind of the chancellor when, because of the temporary conditions then existing, he made appellant an allowance out of the principal, but at the same time, for the purpose of preserving the principal of the estate, provided that the trustee should sequester the rents after the expiration of a period of two years. As the chancellor had jurisdiction of the parties and of the subject matter, he had full power to render the judgment in question, and we cannot say that he erred in refusing to relieve appellant of the payment of rent merely on account of the temporary withdrawal from the State of certain insurance companies which he represented. As the chancellor, however, has power to modify the judgment, we doubt not that he will do so on proper application if appellant's necessities become so pressing as to justify such action.

The amended petition shows that taxes amounting to $278.00 are due on the real estate occupied by appellant. It appears that the trustee has in its hands about $450.00 in personal property. It is the the general rule, of course, that where an estate is held in trust for the benefit of one person for life and another in remainder, taxes are chargeable to and payable out of the income or the life tenant's interest. Hence the life tenant who has the entire use of an estate must pay the taxes assessed against the estate. The reason of this rule lies in the fitness of the exaction of annual charges, which go to the maintenance of the fund, from him who has the produce of the fund, otherwise the principal would be exhausted in its self-support. Tuttle's case, 49 N. J.

Equity, 259, 24 Atl., 1.  In such cases, however, the life tenant's liability is limited to the income received.  Appellant is now occupying the residence from which the chief income of the estate is derived.  He does not allege, nor could he allege, that the income from the balance in the trustee's hands was sufficient to pay the taxes.  Indeed, a large portion of the principal of the estate has already been turned over to him for his necessities.  In view of his occupancy of the residence and of the absence of income to discharge the taxes, the trustee should be required to pay the taxes out of the principal of the estate only in the event that the pressing necessities of appellant require it.  As the amended petition fails to state facts showing such necessity, the chancellor did not err in sustaining the demurrer to that portion thereof asking that the trustee be required to pay the taxes.  Of course, on presentation of a proper state of facts, the chancellor, having in mind the unmistakable intention of the testatrix to provide primarily for the necessities of her son, may, at any time, direct the payment of the taxes out of the principal of the estate if the pressing necessities of appellant require that this be done in order that his home may be saved.

Judgment affirmed.